**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GREAT NORTHERN INSURANCE
COMPANY as subrogee of JAMES
AND STACEY VAN METRE,

Plaintiff,

v.

SHENZHEN GADGETWOO E-
COMMERCE CO., LTD. d/b/a
Rockpals, SHENZHEN IN-LINK
TECH. CO., LTD and DONGGUAN
MAUTEN ELECTRONIC
TECHNOLOGY CO., LTD.,

Defendants.

Case No. 1:23-cv-3245

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Great Northern Insurance Company ("Great Northern"), as subrogee of James and Stacy Van Metre (the "Van Metres"), brings this suit against Defendants Shenzhen Gadgetwoo E-Commerce Co., LTD. and Shenzhen In-Link Tech. Co., LTD. (collectively "Shenzhen Defendants"). Before the Court is Shenzhen Defendants' motion to dismiss the Second Amended Complaint. [70].

For the reasons stated, Shenzhen Defendants' motion to dismiss [70] is granted.

### I.   Background

#### A.  Factual Background[1]

---

[1]The following factual allegations taken from the operative complaint [62] are accepted as true for the purposes of the motion to dismiss. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

1

Shenzhen Defendants design, market, distribute and sell portable power stations and solar panel solutions. [62] ¶ 7. Prior to January 2020, Shenzhen Defendants entered into an agreement with Defendant Dongguan Mauten Electronic Technology Co., Ltd ("Dongguan") to manufacture and/or produce Rockpals 300W and 500W power stations. *Id*. ¶ 12. Shenzhen Defendants created and provided product design specifications for these power stations to Dongguan to be used to manufacture them. *Id*. ¶ 13.

At some point before January 2020, the Van Metres purchased a Rockpals 300W power station ("the Subject Unit") on Amazon. *Id*. ¶ 14. On or about January 12, 2020, the Van Metres heard a loud noise coming from their basement and smoke alarms sounding. *Id*. ¶ 15. Upon further inspection, the Van Metres discovered a fire at the floor level in the corner of a family room where the Subject Unit was located (the "Fire"). *Id*. ¶ 16. It was later determined that the Fire was caused by a failure of the Subject Unit. *Id*. ¶ 17. The Fire caused substantial damage to the Van Metres' home and personal property. *Id*. ¶ 18. As a result of those damages, the Van Metres filed an insurance claim with Great Northern, which Great Northern paid in accordance with the Van Metres' insurance policy. *Id*. ¶¶ 19, 20. As a result of its payments to the Van Metres, Great Northern is subrogated to the Van Metres' claims and rights of recovery against any responsible third parties that caused the damages arising from the Fire. *Id*. ¶ 21.

### B. Procedural Background

On September 21, 2022, Great Northern filed this action against Shenzhen Defendants in the Circuit Court of Cook County, alleging various product liability theories. [1-1]. Shenzhen Defendants removed the action to this Court on May 23, 2023. [1].

On May 8, 2024, Great Northern filed a First Amended Complaint, alleging strict liability against Dongguan as the manufacturer of the Subject Unit and negligence against Dongguan and Shenzhen Defendants. [31]. Shenzhen Defendants thereafter moved to dismiss the negligence claim against them on May 29, 2024. [32]. This Court granted the motion on March 18, 2025, but gave leave to Great Northern to amend its First Amended Complaint. [53]. One month later, the Court granted Great Northern's motion for entry of default, pursuant Rule 55(a), against Dongguan for failing to appear and answer the First Amended Complaint. [54] [56].

On June 16, 2025, Great Northern filed its operative Second Amended Complaint. [62]. The Second Amended Complaint alleges strict liability (Count I) and negligence (Count II) against both Dongguan and Shenzhen Defendants. *Id*.

On October 7, 2025, Shenzhen Defendants filed the instant motion to dismiss the strict liability and negligence claims asserted against them in the Second Amended Complaint. [70].

## II. Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy*

3

*Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III.    Analysis[2]

---

[2]Both parties cite to Illinois law. "Where the parties agree on the law that governs a dispute, and there is at least a reasonable relation between the dispute and the forum whose law has been selected by the parties, we will forego an independent analysis of

Great Northern brings two counts against Shenzhen Defendants: one for strict liability (Count I) and one for negligence (Count II). The Court addresses each in turn.

### A. Count I (Strict Liability)

Count I is a strict liability claim based on a products liability theory. [62] ¶¶ 22–28. Shenzhen Defendants assert that this claim must be dismissed pursuant to the Illinois Distributors' Statute, 735 ILCS 5/2-621. [71] at 4–7. The Court agrees.

The Illinois Distributors' Statute provides that a court "shall order the dismissal" of a product liability claim against a non-manufacturer defendant if the non-manufacturer defendant provides "the correct identity of the manufacturer of the product allegedly causing injury, death or damage." 735 ILCS 5/2-621; *see also Lamkin v. Towner*, 138 Ill. 2d 510, 532, 563 N.E.2d 449 (1990) ("[T]he language of section 2-621 makes dismissal of the 'nonmanufacturer' mandatory when that party complies with the requirements of the section."). This so-called "seller's exception" exists to allow a defendant "whose sole liability results from its role as a member in the chain of distribution of an allegedly defective product, who has not been shown to have created or contributed to the alleged defect or had knowledge of the defect, to get out of a product liability action at an early stage in order to avoid expensive litigation and to defer liability upstream to the manufacturer, the ultimate wrongdoer." *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 775, 887 N.E.2d 569 (2008).

---

the choice-of-law issue and apply the parties' choice." *Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000) (cleaned up). The Court will therefore apply Illinois law.

5

Shenzhen Defendants have provided a certifying affidavit stating, in part, that they are not the designer or manufacturer of the Subject Unit, and that the manufacturer was Dongguan. [77-1]. Great Northern does not dispute that this affidavit was provided. [77]. It would appear, therefore, that Shenzhen Defendants fall within the "seller's exception" delineated in 735 ILCS 5/2-621 and should be dismissed.

Great Northern argues, however, that the "seller's exception" does not apply because, under the Illinois Distributors' Statute, the exception is inapplicable where a plaintiff shows "the defendant has exercised some significant control over the design or manufacture of the product." [77] at 10 (citing 735 ILCS 5/2-621(c)). And Great Northern contends that it has shown significant control by Shenzhen Defendants over the design of the Subject Unit. *Id.* at 11. Great Northern provides two exhibits—an email from a representative of Dongguan, [77-2], and a procurement agreement between Dongguan and Shenzhen Defendants, [77-3]—to support its argument.

The parties debate whether this Court can consider these exhibits, which are external to the Second Amended Complaint, when ruling on the instant motion to dismiss. Generally speaking, a district court is limited to the four corners of the complaint when deciding a motion to dismiss. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013). An exception exists for "documents referenced in the complaint that are central to the [plaintiff's] claims." *Freedom v. Citifinancial, LLC*, No. 15 C 10135, 2016 WL 4060510, at *2 (N.D. Ill. July 25, 2016) (citing *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)).

6

The email from Dongguan is not referenced at all in the Second Amended Complaint, so the Court will not consider it. As to the procurement agreement, the Second Amended Complaint does state that Shenzhen Defendants "entered into a contract with Defendant Dongguan to manufacture and/or produce power stations, including Rockpals 300W and 500W power stations." [62] ¶ 12. So clearly, some "contract" between Dongguan and Shenzhen Defendants is being referred to. But that reference cannot logically refer to the procurement agreement given Great Northern's acknowledgement that it did not receive the procurement agreement until after it filed the Second Amended Complaint. [77] at n.2. Therefore, in effect, Great Northern is attempting to amend its Second Amended Complaint by including the procurement agreement in its response brief. Great Northern is not permitted to do that. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

In the absence of the two aforementioned exhibits, the Court agrees with Shenzhen Defendants that the Second Amended Complaint is dearth of any allegations indicating that Shenzhen Defendants had "significant control" over the design or manufacture of the Subject Unit. 735 ILCS 5/2-621(c). The "seller's exception" therefore applies.

The question now is whether the Court should allow Great Northern to yet again amend its operative complaint to include allegations derived from the exhibits. This Court had wide discretion in deciding whether to grant leave to amend. *Renaud v. City of Chicago*, No. 12-CV-08758, 2013 WL 2242304, at *3 (N.D. Ill. May 21, 2013).

Leave to amend should generally be denied, however, if amendment would be futile. *Id.*

Based on the record before the Court, the Court finds that further amendment would be futile under FRCP 15. The best piece of evidence for Great Northern, the procurement agreement, still does not show that Shenzhen Defendants had significant control over the design or manufacture of the Rockpals power stations. Rather, the procurement agreement, when read as a whole, plausibly allows an inference that the affiliation between Shenzhen Defendants and Dongguan was that of a manufacturer-distributor relationship rather than a joint-manufacturer relationship. And while Great Northern points to language in the procurement agreement relating to "specifications," "drawings," and "instructions" confirmed by both parties, [77] at 7–8, that language relates to quality assurance and inspection, steps that would occur *after* the manufacturing and design process. The confidentiality provision that Great Northern points to likewise does not suggest that Shenzhen Defendants had any significant control over the manufacture or design of the Rockpals power stations. *Id.*

All is not lost, though, for Great Northern. The Illinois Distributors' Statute states that "plaintiff may at any time subsequent to the dismissal move to vacate the order of dismissal and reinstate the certifying defendant" if one of several conditions applies. 735 ILCS 5/2-621(b). If Great Northern can satisfy those conditions, it may be able to rely on 735 ILCS 5/2-621(b) to reinstate Shenzhen Defendants. Dismissal, therefore, will be without prejudice.

8

### B. Count II (Negligence)

Count II is a negligence claim based on four different theories. [62] ¶¶ 29–40. The first is that Shenzhen Defendants had a "duty to exercise reasonable care in the design, manufacture, sourcing, testing, inspecting, marketing, distribution and sale of the Subject Unit, such that it was safe and free of defects." *Id*. ¶ 34. The second is that Shenzhen Defendants "had a duty to warn consumers of the dangerous and defective nature of the Subject Unit." *Id*. ¶ 37. The third is that Shenzhen Defendants "had a duty to market and advertise the units using the 'RockPals' trade name in a responsible and truthful manner." *Id*. ¶ 38. And the fourth is that Shenzhen Defendant "had a duty to inspect all products designed, sold or distributed by it or its affiliates to ensure no defective products were being delivered to customers." *Id*. ¶ 35. Great Northern contends that Shenzhen Defendants breached these duties and that its breaches proximately caused the Van Metres' damages. *Id*. ¶¶ 39–40. Shenzhen Defendants maintain that Great Northern fails to allege a claim of negligence against them under any of these theories. [71] at 7–11. The Court agrees.

#### i. Duty and Breach

As to Great Northern's first theory, it maintains Shenzhen Defendants had a non-delegable duty to design a reasonably safe product. [77] at 13. This duty is well-established in Illinois law. *Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 270, 864 N.E.2d 249 (2007) (collecting cases). But, by its own terms, this duty applies only to manufacturers. *Id*. ("A manufacturer has a nondelegable duty to design reasonably safe products."). There are no allegations that Shenzhen Defendants were, in fact, the

9

ultimate manufacturers of the Subject Unit. So, the "duty to design a reasonably safe product" would not apply to them. Yet even if it did, whether that duty has been breached turns on whether "the manufacturer knew or should have known of the risk posed by the product design at the time of manufacture" of the product. *Carpenter v. Eisai, Inc.*, No. 21-CV-2135, 2022 WL 22971114, at *4 (C.D. Ill. June 13, 2022) (citing *Jablonski v. Ford Motor Co.,* 2011 IL 110096 ¶ 83, 955 N.E.2d 1138). The Second Amended Complaint does not plausibly allege that Shenzhen Defendants knew or should have known the risk posed by the design of the Rockpals 300W and 500W power stations at the time of manufacture of the Subject Unit. Generic allegations of product safety warnings that are not specific to the Rockpals power stations, [62] ¶ 36, 39, do not count.

Great Northern likewise fails on its second theory. The duty to warn only attaches where a defendant "knew or should have known that the [product] was defective at the time" the defendant sold it. *Jones v. UPR Prods., Inc.*, No. 14 C 1248, 2015 WL 3463367, at *5 (N.D. Ill. May 29, 2015). Putting aside Great Northern's conclusory assertions, the Second Amended Complaint provides no facts indicating that Shenzhen Defendants knew or should have known the Subject Unit was defective when they sold it. As such, under Illinois law, no duty to warn attaches. And although Great Northern characterizes its third theory as a "duty to market and advertise … in a responsible and truthful manner," [62] ¶ 38, the core of idea this theory—that Shenzhen Defendants did not disclose the risk of fire—is just another way of phrasing a duty to warn. The third theory thus fails for the same reason.

Great Northern's fourth theory, failure to inspect, presents a tricker question. Though Great Northern provides Illinois authority recognizing a duty to inspect, [77] at 13 (citing *Snelten v. Schmidt Implement Co.*, 269 Ill. App. 3d 988, 991, 647 N.E.2d 1071 (1995)), that authority suggests that such a duty arises only where a seller voluntarily undertakes a duty to use due care in its inspection, for instance, via a provision in a purchase order. *Snelten*, 269 Ill. App. 3d at 991–992. Great Northern alleges no such voluntary undertaking by Shenzhen Defendants here. Yet the Court need not address the scope of the duty to inspect under Illinois law because of another problem: sufficient allegations of breach. There are none. Great Northern does not mention any breach of the duty to inspect by Shenzhen Defendants at all. [62] ¶ 39.

In sum, Great Northern has failed to sufficiently allege the requisite elements of either duty or breach for each of its four theories.

### ii. Proximate Cause

Even if duty and breach were adequately alleged, Great Northern has failed to sufficiently allege proximate cause. Proximate cause requires proof of "cause in fact" and "legal cause." *Thacker v. UNR Industries, Inc.*, 151 Ill.2d 343, 354, 603 N.E.2d 449 (1992). There are generally two tests used when considering cause in fact: (1) the "but for" test, and (2) the "substantial factor" test. *Id*. Under the "but for" test, "a defendant's conduct is not a cause of an event if the event would have occurred without it." *Id*. Under the "substantial factor" test, "the defendant's conduct is said to be a cause of an event if it was a material element and a substantial factor in bringing the event about." *Id*. at 354–55.

11

Great Northern cannot satisfy either test. Like with its First Amended Complaint, Great Northern's Second Amended Complaint still does not offer sufficient allegations connecting Shenzhen Defendant's purported breaches to the Van Metres' injuries. At best, Great Northern contends that "the Fire was caused by a failure in the [Subject Unit]." [62] ¶ 17. However, this allegation still does not plausibly allege that "but for" Shenzhen Defendants' conduct, as opposed to Dongguan's conduct, the failure in the Subject Unit would not have occurred. Nor does it plausibly establish that Shenzhen Defendants' conduct was a substantial factor in bringing about the failure.

For these reasons, Great Northern has not sufficiently alleged cause in fact and, in turn, has failed to sufficiently allege proximate cause.

## IV.    Conclusion

For the stated reasons, Shenzhen Defendants' motion to dismiss [70] is granted. Count I is dismissed without prejudice. Count II is dismissed with prejudice.

E N T E R:

Dated: May 11, 2026

_____
MARY M. ROWLAND
United States District Judge

12